IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | C.R. NO. V-11-31 |
| | § | |
| KHANH VU, ET AL. | § | |

## OPINION GRANTING DEFENDANT'S MOTION TO REDUCE BOND

On April 27, 2011, defendants Khanh Vu and Seaside Aquaculture, Inc. were indicted on one count each of knowingly killing 90 brown pelicans without being permitted to do so by regulation as required by law in violation of the Migratory Bird Treaty Act, 16 U.S.C. §§ 703, 707(a).  (D.E. 1).  Pending is a motion by defendant Seaside Aquaculture to reduce its bond. (D.E. 20).

## I.  BACKGROUND

After the indictment, the government filed a motion for the issuance of a summons requiring defendant Seaside Aquaculture to appear and seeking a $360,000 bond.  (D.E. 5).  On April 28, 2011, that motion was granted.  (D.E. 6).

At a May 9, 2011 hearing, defense counsel sought a reduction of the bond amount, or in the alternative more time to post the bond.  The government explained that the bond amount was based upon its expert's calculations regarding the amount of restitution.  The Assistant United States Attorney explained that $360,000 was roughly the middle point of the total estimated restitution that experts believe appropriate for the loss of 90 brown pelicans.  Thus, according to the expert's theory the loss of a single brown pelican may cost only $500, but the loss of 90 birds cannot simply be calculated by multiplying 90 by $500.  Instead, the loss increases at a much higher rate with the loss of so many birds because an entire community may need to be replaced

with the attendant higher costs.  Ultimately, defendant Seaside Aquaculture was granted a week to post the bond.

In the pending motion, defendant Seaside Aquaculture argues that $360,000 is excessive and that there is no case law to support such an amount of restitution.  (D.E. 20, at 1).  Defense counsel asserts that it is unable to obtain this amount, but could secure between $50,000 and $75,000 for a bond.  Id. at 2.  Consequently, defendant seeks a reduction of the bond to an amount in that range.  Id.  The government opposes the motion to reduce.

At a May 27, 2011 hearing, defense counsel addressed the arguments in the pending motion and asserted that Seaside Aquaculture could not afford to pay a bond of $360,000.  He proffered that Seaside Aquaculture has failed to make a profit in the last couple of years.  For the first time, defense counsel also raised the argument that restitution is not available for a violation of the Migratory Bird Treaty Act.  Specifically, defendant relied upon United States v. Love, 431 F.3d 477, 479 (5th Cir. 2005) for the proposition that "[a] federal court cannot order restitution 'except when authorized by statute.'" (citation omitted).  It argued that restitution is governed by 18 U.S.C. § 3663, which does not specifically include this violation as covered by that section.  Additionally, the penalty provisions for this charge do not provide for restitution.  16 U.S.C. § 707(a).  Finally, defense counsel cites as support a Report for Congress prepared by the Congressional Research Service entitled "Restitution in Federal Criminal Cases" dated August 17, 2007.

## II.  ANALYSIS

Congress has specifically addressed what offenses may and must include restitution as part of any sentencing for a conviction.  18 U.S.C. § 3663(a)(1)(A); 18 U.S.C. § 3663A.  Those

2

offenses do not include violations of the Migratory Bird Treaty Act.  Moreover, as defense counsel argues, the section addressing penalties for any violation of the Migratory Bird Treaty Act does not include restitution.  <u>See</u> 16 U.S.C. § 707(a) (noting only a maximum term of imprisonment of six months and a maximum fine of $15,000).  Nonetheless, defendant's view that restitution is clearly foreclosed by law for the charged offense is incorrect.

**A.      Defendant's Argument That Restitution Is Not Available For The Offense Fails Because Supervised Release Expands The Number Of Offenses For Which Restitution May Be Ordered.**

In <u>Love</u>, the Fifth Circuit noted that there are two potential sources for statutory authority to impose restitution.  431 F.3d at 479-80.  The first is 18 U.S.C. § 3556, the general restitution statute.  <u>Id.</u>  That statute provides that a court "shall order restitution in accordance with section 3663A, and may order restitution in accordance with section 3663."  18 U.S.C. § 3556.  Section 3663A (the Mandatory Victims Restitution Act ("MVRA")) applies to only a small handful of offenses, none of which are applicable here.  18 U.S.C. § 3663A(c)(1)(A).  Section 3663 (the Victim and Witness Protection Act ("VWPA")) encompasses more offenses, but does not cover the charges against defendant.  18 U.S.C. § 3663(a)(1)(A).

However, there is a second source of statutory authority that defense counsel did not address: 18 U.S.C. § 3583.  <u>Love</u>, 431 F.3d at 480.  That statute deals with supervised release and provides, in its "catchall" provision, that a

> court may order, as a further condition of supervised release, to the extent that such condition –
>
> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section

3

3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 944(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate.

18 U.S.C. § 3583(d).

Section 3563(b)(2) in turn allows for "restitution to a victim of the offenses under section 3556 (but not subject to the limitation of [the VWPA] or [the MVRA])."  In Love, the Fifth Circuit noted in dicta that it "seems correct" that the parenthetical language in § 3563(b)(2) signifies that restitution pursuant to supervised release can be ordered for a broader array of offenses than those delineated in the VWPA and the MVRA.  431 F.3d at 480 (citations omitted).  In United States v. Dahlstrom, 180 F.3d 677 (5th Cir. 1999), the court further expressed agreement with the Second Circuit "that although restitution may not be directly permitted under [the VWPA], a district court may order restitution within the context of a supervised release."  Id. at 686 (citing United States v. Bok, 156 F.3d 157, 166 (2d Cir. 1998)). The Dahlstrom court also noted that restitution may be ordered as part of supervised release "regardless of the limitations set out in § 3663(a)," the provision of the VWPA that includes the list of applicable offenses.  Id. (citation omitted).  In Love, the Fifth Circuit explained that Dahlstrom "held that the 'enumerated crime limitation' of the VWPA and the MVRA does not apply to § 3563(b)(2)."  Love, 431 F.3d at 481 n.14.

Although the Fifth Circuit has yet to directly address the precise scope of restitution as a condition of supervised release (and its relationship to both the VWPA and the MVRA), at least

one lower court has interpreted <u>Love</u> to indicate that it is permissible to order restitution as a condition of supervised release "in all cases."  <u>United States v. Roush</u>, 452 F. Supp. 2d 676, 680 n.5 (N.D. Tex. 2006), <u>reversed</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>United States v. Roush</u>, 466 F.3d 380 (5th Cir. 2006).  Indeed, in <u>Roush</u>, the Fifth Circuit implicitly indicated that restitution was available for the defendant's offense despite the fact that it is mentioned in neither restitution statute.  466 F.3d at 390 n.9.  Other circuits agree with <u>Roush</u> and the <u>Love</u> <u>dictum</u> that restitution may be ordered as a condition of supervised release (or probation) even where the general restitution statutes do not mention the crime of conviction.  <u>See</u>, <u>e.g.</u>, <u>United States v. Butler</u>, 297 F.3d 505, 518 (6th Cir. 2002); <u>United States v. Frith</u>, 461 F.3d 914, 919-20 (7th Cir. 2006) (citations omitted); <u>United States v. Varrone</u>, 554 F.3d 327, 333-34 (2d Cir. 2009) (Sotomayor, J.).

It warrants mention that there remains some ambiguity in the Fifth Circuit as to the state of the law on this question.  In <u>United States v. Stout</u>, 32 F.3d 901 (5th Cir. 1994), for example, the Fifth Circuit considered an appeal from a defendant convicted of failing to file timely tax returns.  After pleading guilty to the offense, the defendant challenged the restitution order entered by the district court.  <u>Id.</u> at 904.  The Fifth Circuit began its discussion of the issue with the proposition that "[s]entencing courts are permitted to impose restitution as a condition of supervised release to the extent agreed to by the government and the defendant in a plea agreement."  <u>Id.</u> (citations omitted).  The <u>Stout</u> court then found the order there "improper because the restitution statute permits such separate orders only when the defendant's offense is an offense under either Title 18 or Title 49."  <u>Id.</u> at 905 (citation omitted).  After the government conceded this error, the Fifth Circuit remanded the case with instructions not to re-issue the restitution order.  <u>Id.</u>  Considered in isolation, this language could plausibly be read to bar the

imposition of court-ordered restitution for offenses omitted from the restitution statutes in the absence of the defendant agreeing to such.  See United States v. Miller, 406 F.3d 323, 329-330 (5th Cir. 2005) (describing defendant taking this position, but declining to address argument).

Despite the tension in Fifth Circuit jurisprudence, the greater weight of authority cuts against defendant's stance.  The Fifth Circuit spoke more definitively on the issue in Love and Dahlstrom than it did in Stout and Miller.  Roush suggests that lower courts consider restitution available for a broader range of offenses.  Other circuits support the proposition.  In sum, therefore, the stronger argument is that restitution is available as a condition of supervised release for offenses not mentioned in the VWPA and the MVRA.  At the very least, the question is at most ambiguous, and defendant's argument that the omission of the Migratory Bird Act from those statutes implies the unavailability of restitution in this case is consequently unpersuasive.

**B.      There Is No Other Conclusive Reason Foreclosing The Possibility Of Restitution.**

**1.      The government can be a "victim" for purposes of restitution.**

The VWPA and the MVRA make restitution available only for the "victim" of the offense.  See 18 U.S.C. § 3663(a)(1)(A) ("The court ... may order ... that the defendant make restitution to any victim of such offense"); 18 U.S.C. § 3663A(a)(1) ("the court shall order ... that the defendant make restitution to the victim of the offense") (emphases added).  This requirement holds true in the context of supervised release and probation as well.  See Love, 431 F.3d at 480-81.  Similarly, the definition of victim has been analyzed identically in the differing statutory contexts.  See United States v. Cottman, 142 F.3d 160, 170 (3d Cir. 1998) (citation omitted). Thus, restitution would likely not be available if the government could not properly be

6

considered a victim of the offense defendant is accused of committing.

In unanimity with other courts, the Fifth Circuit has held that the government can, under certain circumstances, qualify as a victim for purposes of restitution.  See United States v. Taylor, 582 F.3d 558, 565-66 (5th Cir. 2009) (per curiam) (citations omitted), cert. denied, __ U.S. __, 130 S. Ct. 1116 (2010).  The government is therefore not excluded from qualifying as a potential victim deserving restitution.

### 2.      The government is potentially a "victim" for restitution purposes in this case.

There is no case law bearing directly on the question of whether a violation of the Migratory Bird Act can entitle the government to restitution as a victim.  With respect to other environmental offenses, however, restitution to a governmental entity has been found appropriate.  See United States v. West Indies Transport, Inc., 127 F.3d 299, 315 (3d Cir. 1997) (restitution properly ordered "to offset the costs of cleaning up [defendants'] environmental damage").  The logic of the restitution order in West Indies Transport is substantially similar to the rationale for restitution adduced by the government here: as a function of the government's need to expend funds to rectify the environmental harm caused by the commission of the crime.  Indeed, West Indies Transport suggests not only that restitution is available, but that the government properly estimated it with reference to the costs of reestablishing the lost pelican population, not the abstract "value" of each brown pelican.[1]

---

[1] The Assistant United States Attorney was not entirely clear at the May 9, 2011 hearing whether the costs of making up for the lost population were actually going to be borne by the government, or whether they were simply being used as a sort of shortcut to calculate restitution even though the government would not attempt to restore the population.  The former is assumed for purposes of analysis, given that the question here is the possibility of restitution.  If the government does not intend to undertake these efforts itself, the availability of restitution would become a substantially more complicated question.  See generally United States v. Bengis, 631 F.3d 33 (2d Cir.) (suggesting that restitution for a governmental entity is not appropriate for loss of animals unless it has concrete property interest in them, and that purely "regulatory" scheme does not confer such interest), cert. denied, __ U.S. __, 2011 WL 1302145 (May 23, 2011).

As a result, there is no reason to doubt that the government can potentially qualify as a victim for restitution purposes in this case.

### III.  CONCLUSION

In light of these authorities, restitution will likely be available in this case if defendant is ultimately convicted.  Although some ambiguity remains in the Fifth Circuit regarding the scope of restitution pursuant to supervised release, that ambiguity does not remotely justify defendant's argument that restitution is foreclosed by law in this case, nor its inference from there that a potential restitution amount should not form the basis for a calculation of bond.

Accordingly, the motion by defendant Seaside Aquaculture to reduce its bond, (D.E. 20), is GRANTED.  The bond amount is reduced to $50,000.  Seaside Aquaculture is to post this bond no later than the close of business on June 6, 2011.

ORDERED this 1st day of June 2011.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

8